UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELINDA MAE MILLER,

                    Plaintiff,

v.                                                    6:15-CV-0552
                                                      (GTS)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

THE DeHAAN LAW FIRM, P.C.                             JOHN W. DeHAAN, ESQ.
  Counsel for Plaintiff
300 Rabro Drive, Suite 101
Hauppauge, NY 11788

U.S. SOCIAL SECURITY ADMIN.                           GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II              Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Melinda Mae Miller

("Plaintiff") against the Acting Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions

for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, Plaintiff's

motion is denied and Defendant's motion is granted.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born on November 6, 1963. The highest level of education that she achieved was completing the ninth grade in high school. Her employment history consists of being a self-employed daycare worker. Generally, her alleged disability consists of degenerative disc disease, diabetic peripheral neuropathy, bilateral peripheral vascular disease, claudication, anxiety/depression/insomnia, fibromyalgia, arthritis, Raynaud's Disease, chronic sinus problems, acid reflux, high cholesterol, and obesity. Plaintiff's alleged disability onset date was originally December 31, 2006, but was later amended to June 7, 2012.

## B. Procedural History

On June 7, 2012, Plaintiff applied for Supplemental Security Income. (Tr. 119-122.) Her application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). (Tr. 54-59, 62.) On December 6, 2013, she appeared before the ALJ, Robert E. Gale. (Tr. 26-52.) On January 30, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 11-22.) On March 27, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (Tr. 14-18.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 7, 2012 (her application date). (Tr. 16.) Second, the ALJ

found that Plaintiff had the following two severe impairments: (a) degenerative disc disease, and (b) diabetes mellitus with peripheral neuropathy. (Tr. 16-17.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix, 1. (Tr. 17.) In so doing, the ALJ considered the listings in sections 1.04 and 11.14 (the "Listings"). (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to (a) lift/carry 20 pounds on an occasional basis and ten pounds on a frequent basis, (b) stand for six hours total out of an eight-hour work day for 20-30 minutes at a time, (c) walk for six hours total out of an eight-hour work day for 20-30 minutes at a time, (d) sit for six hours out of an eight-hour workday, (e) push/pull 20 pounds on an occasional basis and ten pounds on a frequent basis, and (f) engage in no climbing of ladders, ropes or scaffolds. (*Id.*) Fifth, the ALJ found that Plaintiff has no past relevant work. (Tr. 20.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC. (*Id.*)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.      Plaintiff's Arguments

Generally, Plaintiff makes the following six arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to fulfill his duty to adequately develop the record by failing to order a consultative intelligence examination for the following three reasons: (a) Plaintiff's cognitive difficulties are sufficiently long-standing and well documented that a consultative intelligence exam was essential to adequately develop the record regarding her potential adaptive functioning disability and qualification for benefits under

Listing 12.05; (b) the findings made by the Lewis County Department of Social Services and Plaintiff's results on the Test of Adult Basic Education ("TABE") provided a sufficient basis for the ALJ to order a consultative intelligence exam; and (c) the ALJ disregarded Plaintiff's three separate requests for a consultative intelligence exam. (Dkt. No. 11, at 16-19 [Pl.'s Mem. of Law].)[1]

Second, Plaintiff argues that the ALJ erred in assessing her mental functioning for the following two reasons: (a) in making his assessment, the ALJ relied on the treatment notes of Plaintiff's podiatrist, which provide no evidence of her overall cognitive capabilities or impairments; and (b) it is apparent that the ALJ limited his analysis of Plaintiff's mental limitations to those related to the side effects of her medications, which does not constitute an overall assessment of her cognitive abilities. (*Id.* at 18-19.)

Third, Plaintiff argues that the ALJ failed in his duty to fully develop the record regarding Plaintiff's diagnosis of fibromyalgia to determine whether or not it was a severe impairment for the following three reasons: (a) the ALJ failed to contact Plaintiff's treating physician for additional information regarding her fibromyalgia, (b) the ALJ failed to request more information from Plaintiff regarding her symptoms, and (c) the ALJ failed to order a consultative exam to further assess the severity and functional effects of Plaintiff's fibromyalgia. (*Id.* at 21.)

Fourth, Plaintiff argues that the ALJ did not properly follow the treating physician rule for the following two reasons: (a) the ALJ failed to consider all of the factors set forth in 20 C.F.R. § 416.927(c)(2) when deciding not to afford the opinion of Plaintiff's treating physician

---

[1]     Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

controlling weight; and (b) the ALJ incorrectly gave great weight to the consultative examiner's opinion that Plaintiff had mild restrictions in prolonged walking and standing.  (*Id.* at 21-26.)

Fifth, Plaintiff argues that the ALJ improperly evaluated her RFC for the following three reasons: (a) the ALJ completely disregarded the reported side effects from the medication that Plaintiff was prescribed to treat her neuropathy and the effect they may have had on her mental capabilities; (b) the ALJ made an improper credibility determination when he found that Plaintiff was non-compliant with her treatment but failed to consider the fact that she needed prior authorization for Cymbalta and could not always afford to purchase the drug; and (c) the ALJ's RFC failed to account for any of Plaintiff's cognitive limitations because he refused to order a consultative intelligence exam.  (*Id.* at 26-29.)

Sixth, and finally, Plaintiff argues that, given her significant non-exertional impairments resulting from both her medical conditions and the side effects that she experiences from her prescribed medication, the ALJ erred by not calling a vocational expert to evaluate what jobs would be available to her.  (*Id.* at 29-30.)  Furthermore, Plaintiff argues that the Commissioner failed to meet her burden of proof at the fifth step of the evaluation process because the ALJ's reliance on the Medical Vocational Guidelines ("the Grids") was inappropriate and testimony from a vocational expert was required.  (*Id.* at 30-31.)

### B.    Defendant's Arguments

Generally, Defendant makes the following six arguments in opposition to Plaintiff's motion for judgment on the pleadings and in support of her own such motion.  First, Defendant argues that the ALJ sufficiently developed the record and was not required to order a consultative intelligence exam for the following four reasons: (a) Plaintiff's treatment records did not suggest

a serious impairment regarding her mental faculties; (b) the ALJ noted that there was no indication that Plaintiff had undergone any psychiatric treatment for any alleged mental symptoms, Plaintiff denied receiving any counseling or being hospitalized due to her mental health, and her mental status examinations were all normal; (c) Plaintiff was represented by counsel throughout the administrative process and, therefore, had the ability to cultivate her own mental health records and seek a consultative exam; and (d) it was Plaintiff's burden to provide the ALJ with evidence regarding her alleged disability. (Dkt. No. 12, at 6-7 [Def.'s Mem. of Law].)

Second, Defendant argues that the ALJ sufficiently developed the record regarding Plaintiff's fibromyalgia and was not required to contact Plaintiff's treating physician for additional information because (a) there were no obvious gaps in the administrative record and the ALJ had a complete medical history of Plaintiff's fibromyalgia, and (b) the ALJ properly found that, under SSR 12-2p, no evidence existed to establish that Plaintiff's fibromyalgia is a medically determinable impairment. (*Id.* at 8.)

Third, Defendant argues that the ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Taylor, for the following three reasons: (a) in his decision, the ALJ thoroughly summarized Dr. Taylor's assessment and noted that his opinion was inconsistent with the evidence as a whole; (b) the ALJ properly found that Dr. Taylor's opinion was also inconsistent with the opinion of the consultative examiner, Dr. Pamela Tabb, whose opinion was consistent with the medical evidence of record; and (c) it is the ALJ's duty to resolve any conflict in the evidence and the ALJ properly did so in this case. (*Id.* at 8-9.)

Fourth, Defendant argues that the ALJ accounted for the alleged side effects caused by Plaintiff's medication because the ALJ specifically stated in his decision that "[t]he claimant reports that her medication causes a variety of side effects. However, clinical findings do not show that the claimant has presented for exams with objective signs of continuing difficulties with these reported side effects." (*Id.* at 9.) Furthermore, Defendant argues that nearly all of the claims regarding side effects were from Plaintiff's subjective complaints, which were not corroborated by objective medical evidence. (*Id.*) Finally, Defendant argues that the ALJ properly noted that Plaintiff had not attempted to change her medication in response to these alleged side effects. (*Id.*)

Fifth, Defendant argues that the ALJ's credibility determination regarding Plaintiff's non-compliance with treatment was proper because (a) the fact that Plaintiff had not taken Cymbalta for several months was factually true and was reflected in Dr. Taylor's notes, and (b) the ALJ was cognizant of the fact that Plaintiff had not obtained prior authorization for the drug but properly noted that there were no indications Plaintiff had pursued authorization for Cymbalta, which suggested that Plaintiff's condition was not serious enough to command her attention. (*Id.* at 10.)

Sixth, and finally, Defendant argues that the ALJ's decision not to call a vocational expert was not error because (a) testimony from a vocational expert is necessary only where a claimant's work capacity is significantly diminished by nonexertional limitations, and (b) the ALJ properly rejected Plaintiff's claims that she had significant mental limitations. (*Id.* at 10-11.) Furthermore, Defendant argues that she met her burden of proof at step five because the ALJ properly determined that Plaintiff could perform a nearly full range of light work and, therefore, Medical-Vocational Rule 202.17 and Rule 202.10 directed that a finding of "not disabled" was warranted. (*Id.* at 11.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## IV. ANALYSIS

### A. Whether the ALJ Failed to Adequately Develop the Record

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 6-8 [Def.'s Mem. of

Law].) To those reasons, the Court adds the following analysis.

"Since Social Security proceedings are non-adversarial, the ALJ must objectively

investigate the facts and develop the arguments both for and against granting benefits." *Hall ex*

*rel. M.M. v. Astrue*, 11-CV-6317, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012) (internal

quotation marks omitted). "It is the ALJ's duty to develop the administrative record even if a

claimant is represented by counsel." *Hall*, 2012 WL 2120613, at *4. "Encompassed in this duty

is the requirement that an ALJ assemble the claimant's complete medical history and re-contact

treating physicians or obtain consultative examinations where the information received is

inadequate to determine whether the claimant is disabled." *Williams v. Colvin*, 98 F. Supp. 3d

614, 633-34 (W.D.N.Y. 2015).

"While the ALJ has an affirmative obligation to develop the administrative record, her

duty to do so is not without limit." *Colon-Torres v. Colvin*, 12-CV-1591, 2014 WL 296845, at *2

(N.D.N.Y. Jan. 27, 2014) (Sharpe, J.). "Indeed, if all of the evidence received is consistent and

sufficient to determine whether a claimant is disabled, further development of the record is

unnecessary, and the ALJ may make her determination based upon that evidence." *Colon-*

*Torres*, 2014 WL 296845, at *2. "Consistent with that notion, where there are no 'obvious gaps' in the record, the ALJ is not required to seek additional information." *Id.* "Moreover, the ALJ is afforded discretion in determining whether a consultative intelligence exam is warranted. . . . As with development of the record generally, '[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision.'" *Id.* (quoting *Hall*, 2012 WL 2120613, at *4); *see also Tankisi v. Comm'r*, 521 F. App'x 29, 32 (2d Cir. 2013) (stating that "[i]t can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision. . . . However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it").

### 1. The ALJ Did Not Err in Declining to Order a Consultative Intelligence Exam

As discussed above in Part II.A. of this Decision and Order, Plaintiff argues that the ALJ failed to fully develop the record when he neglected to order a consultative intelligence exam because there was record evidence suggesting that she might have a mental disability that meets Listing 12.05. In support of this argument, Plaintiff points to her results on the TABE exam and her "documented cognitive problems in school, work, and during the [administrative] hearing." (Dkt. No. 11, at 19 [Pl.'s Mem. of Law].) However, the Court finds these arguments to be unpersuasive for the two reasons discussed below.

First, "Plaintiff bears the burden of establishing mental impairments." *Haskins v. Comm'r*, 05-CV-0292, 2008 WL 5113781, at *7 (N.D.N.Y. Sept. 11, 2008) (Treece, M.J.). In this regard, the ALJ correctly noted that Plaintiff did not demonstrate that she has a medically determinable mental impairment. (Tr. 17.) Furthermore, Plaintiff testified at the administrative hearing that she has not received any mental health treatment or counseling. (Tr. 41-42.) Nor

did Plaintiff submit evidence regarding her IQ or her educational records. Although Plaintiff submitted her test results from the TABE exam (Tr. 194-95), which was used by the Lewis County Department of Social Services in its assessment of her disability, the scores are not dated and, as Plaintiff correctly notes, the ALJ was not required to follow the decision of other governmental agencies in his disability determination. (Dkt. No. 11, at 18 [Pl.'s Mem. of Law].)

Second, there is substantial record evidence that Plaintiff did not suffer work-related functional limitations resulting from a possible mental impairment. Specifically, the ALJ considered Plaintiff's reported activities of daily living (Tr. 18-20), which reveal that she is able to perform some household tasks, such as cooking, cleaning, doing laundry, providing care for her dog, and mowing the lawn for 20 minutes at a time. (Tr. 156-58, 254, 285, 304.) Furthermore, Plaintiff does not have any problems with her personal care; and she can pay bills, count change, and handle her savings account. (Tr. 156-57, 159.) Plaintiff also indicated that she can follow spoken and written instructions, she socializes daily, and she does not have a problem getting along with others. (Tr. 160, 162.). Accordingly, the ALJ properly acted within his discretion when deciding not to order a consultative intelligence exam because the record evidence did not suggest that an examination was necessary. *See Serianni v. Astrue*, 07-CV-0250, 2010 WL 786305, at *5 (N.D.N.Y. Mar. 1, 2010) ("An ALJ is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination.") (Mordue, J.); *see also Haskins*, 2008 WL 5113781, at *7 n.5 (finding no duty to order consultative intelligence evaluation where evidence did not support work-related functional limitations resulting from a possible mental impairment); *Gorman v. Colvin*, 14-CV-0103, 2015 WL 1383823, at *4 (N.D.N.Y. Mar. 25, 2015) (McAvoy, J.) ("Plaintiff fails to point to evidence

during the relevant period showing that her intellectual capacity precluded her from engaging in simple, routine, and repetitive unskilled work activities, and therefore the ALJ had no duty to order a consultive intellectual evaluation").

**2.     The ALJ Did Not Fail to Fulfill His Duty to Fully Develop the Record Regarding Plaintiff's Fibromyalgia**

Plaintiff argues that the ALJ failed to fulfill his duty to fully develop the record by obtaining additional information regarding her diagnosis of fibromyalgia as required by SSR 12-2p.  (Dkt. No. 11, at 19-20 [Pl.'s Mem. of Law].)  Under SSR 12-2p, fibromyalgia is considered a medically determinable impairment if there is a physician diagnosis of fibromyalgia and he provides evidence meeting either the 1990 American College of Rheumatology Criteria for Classification of Fibromyalgia or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. SSR 12–2p, 2012 WL 3104869, at *2 (July 25, 2012).  These two diagnostic regimes establish two different sets of specific medical findings necessary for a fibromyalgia diagnosis, either of which is sufficient to establish the impairment.[2] *Id.*, at *2-3.

However, a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F.

---

[2]     The first set of criteria requires (1) a "history of widespread pain-that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)–that has persisted . . . for at least 3 months" and (2) "[a]t least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist" and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2-3.

The second set of criteria requires "all three of the following criteria," including (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

App'x 20, 22 (2d Cir. 2008); *see also* SSR 12-2p, 2012 WL 3017612, at *2 ("We cannot rely upon the physician's diagnosis alone."). Nor can a physician's diagnosis be "inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 WL 3017612, at *2. Nonetheless, "denying a fibromyalgia-claimant's claim of disability based in part on a *perceived* lack of *objective* evidence is reversible error." *Campbell v. Colvin*, 13-CV-0451, 2015 WL 73763, at *6 (N.D.N.Y. Jan. 6, 2015) (Sharpe, C.J.) (emphasis added). "Thus, absence of medically-acceptable clinical and laboratory diagnostic findings (*beyond clinical signs and symptoms necessary for a diagnosis*) is a legally-improper basis for rejecting medical source opinion." *Campbell*, 2015 WL 73763, at *6 (emphasis added).

Here, the ALJ found that "the claimant has not demonstrated, through objective medical evidence, that her fibromyalgia is a medically determinable impairment." (Tr. 17.) The ALJ did not elaborate further regarding the basis for this determination but instead cites Plaintiff's medical records from Dr. Taylor and SSR 12-2p. (*Id.*) A review of these medical records from April 16, 2012, to July 22, 2013, indicate that, on March 22, 2013, Plaintiff was diagnosed with fibromyalgia. (Tr. 297.) The record further indicates that Plaintiff suffered from "[l]ower back pain, muscle aches, pain localized to one or more joints, and joint stiffness localized to one or more joints." (Tr. 298.) Plaintiff was prescribed Cymbalta to treat her fibromyalgia. (Tr. 300.) The medical records from Plaintiff's subsequent visits in April, May, and June 2013 continue to refer to Plaintiff's diagnosis of fibromyalgia and prescription medication for muscle relaxants to treat muscle spasms. (Tr. 293, 289, 282.) However, none of the records from Plaintiff's diagnosing physician provide the basis for her diagnosis (nor does the record as a whole suggest that Plaintiff's symptoms would meet either of the two sets of diagnostic criteria discussed above in note 2 of this Decision and Order).

Under these circumstances, Plaintiff correctly notes that SSR 12-2p provides that the Commissioner *may* take one or more actions to resolve any insufficiency in the evidence in order to determine whether a claimant has a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3017612, at *4. However, "this provision does not heighten an ALJ's already existing duty to develop the record nor does it alleviate the claimant's burden to show the existence of medically determinable impairments[.]" *Miller v. Colvin*, 13-CV-2315, 2015 WL 8967188, at *4 (D. Or. Dec. 14, 2015); *see also Bauman v. Colvin*, 15-CV-0066, 2015 WL 4660106, at *3 (W.D. Wash. Aug. 4, 2015) (stating that, "[a]lthough the SSR cited by Plaintiff provides that an ALJ *may* further develop the record regarding fibromyalgia, she has not established that the ALJ breached her duty to do so in this case"). While it may have been preferable (for the sake of thoroughness) for the ALJ to have made additional efforts to determine the basis for Plaintiff's diagnosis, the Court finds that there were no obvious gaps in the record requiring him to do so.

Specifically, although Plaintiff argues that the ALJ should have sought additional information regarding her diagnosis, she fails to articulate what this evidence consists of and whether it was missing from the record. Indeed, Plaintiff's counsel indicated at the administrative hearing that the record could be closed. (Tr. 50.) Once again, Plaintiff bears the burden at Steps One through Four. *See Hamilton v. Colvin*, 15-CV-0859, 2016 WL 2757975, at *5 (D. Or. May 12, 2016) (stating that "the ALJ's duty to develop the record was not triggered because the medical evidence was not ambiguous. Although there are multiple references to an apparent past diagnosis in the medical record of Plaintiff as having fibromyalgia, the record does not contain evidence sufficient to establish either of the criteria under SSR 12-2P").

Furthermore, Plaintiff has failed to show that, had the ALJ found her fibromyalgia to be a medically determinable impairment, he would have found additional limitations on her ability to work. It appears from the ALJ's decision that he considered all of the medical opinions and records submitted by Plaintiff in formulating her RFC. (Tr. 16-21.) Accordingly, even if the ALJ did err in not fully developing the record with respect to Plaintiff's fibromyalgia, such an error was harmless because he considered her symptoms during the subsequent steps. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps); *Snyder v. Colvin*, 13-CV-0585, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through sequential evaluation on the basis of combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless.").

**B.      Whether the ALJ Failed to Properly Follow the Treating Physician Rule**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 8-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the

frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). Finally, the ALJ is also required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir. 1998]). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Reyes v. Colvin*, 13-CV-4683, 2015 WL 337483, at *14 (S.D.N.Y. Jan. 26, 2015).

As discussed above in Part II.A. of this Decision and Order, Plaintiff argues that the ALJ failed to consider all of the required factors in 20 C.F.R. § 416.927(c)(2). "Although the ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in his decision." *Reyes*, 2015 WL 337483, at *16; *see also Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor."). "If it is unclear whether the ALJ explicitly considered all of the factors, the court may search the record to assure that the treating physician rule has not been traversed, but only when the ALJ gives good enough reasons to allow the court to engage in such an inquiry." *Reyes*, 2015 WL 337483, at *16 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]).

In the present case, the ALJ's reasoning in his decision, along with the facts in the record, reasonably allow the Court to conclude that he considered the treating physician rule even though he did not explicitly recite each factor. Specifically, the ALJ discussed Dr. Taylor's opinion at

length as well as the reasons why he found Dr. Taylor's opinion to be inconsistent with the record as a whole. (Tr. 19-20.) It is also readily apparent from the medical source statements and medical records, which were cited to by the ALJ, that Dr. Taylor is an internist and that Plaintiff was under his care for several years. (*Id.*) Accordingly, the Court finds that the ALJ considered each factor under 20 C.F.R. § 416.927(c)(2) and that his decision to afford Dr. Taylor's opinion less weight was supported by substantial evidence for the reasons stated by the ALJ. (*Id.*) Nor did the ALJ err by assigning greater weight to the consultative examiner's opinion. *See Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) ("It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions. . . . Moreover, an ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence.") (collecting cases).

### C. Whether the ALJ Improperly Evaluated Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 9-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As discussed above in Part II.A. of this Decision and Order, Plaintiff argues that the ALJ failed to properly consider the reported side effects of Plaintiff's medication on her ability to work and mischaracterized some of the medical evidence in finding that she was non-compliant with her treatment. "Social Security Regulations provide that the RFC assessment must be based on all of the relevant evidence in the case record, including, for example, the side effects of medication." *May v. Colvin*, 13-CV-6011, 2014 WL 3546297, at *9 (W.D.N.Y. July 10, 2014)

(citing SSR 96-8p); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(G) ("In cases where overt symptomatology is attenuated by the use of such drugs, particular attention must be focused on the functional limitations that may persist. We will consider these functional limitations in assessing the severity of your impairment.").

Here, Plaintiff acknowledges that the ALJ considered her claim regarding the alleged side effects of her medication.[3] (Dkt. No. 11, at 27 [Pl.'s Mem. of Law].) Specifically, the ALJ stated as follows:

> The claimant reports that her medication causes a variety of side effects. However, clinical findings do not show that the claimant has presented for exams with objective signs of continuing difficulties with these reported side effects. . . . There is no indication that her medications have been changed as a result of these reported side effects or that she has undergone psychiatric treatment for her reported mental symptoms.

(Tr. 19.) Plaintiff takes issue with this determination, arguing that her reported side effects are well documented in the record, citing (a) her testimony at the administrative hearing regarding the side effects she experiences after taking medication to treat her neuropathy, (b) the information she provided in a disability form where she stated that she experiences "memory loss, anxiety, nervousness, [and] dizziness," and (c) medical records documenting that she has complained to Dr. Taylor regarding these side effects. (Dkt. No. 11, at 27 [Pl.'s Mem. of Law].)

---

[3] Indeed, the ALJ cites the same medical records that Plaintiff does when discussing her alleged side effects in his decision, indicating that he did consider them. (Tr. 18, 19.) In any event, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). When, as here, "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

While Plaintiff is correct that her subjective complaints are well documented, the ALJ also properly determined that her continuing difficulties with these side effects have not been corroborated by objective medical evidence. Similarly, the objective medical evidence does not reveal that these alleged side effects limit Plaintiff's ability to function. Accordingly, the ALJ properly considered the alleged side effects caused by Plaintiff's medication and his determination is supported by substantial evidence. *See Peguero v. Barnhart*, 05-CV-5799, 2006 WL 2570607, at *4 (S.D.N.Y. Sept. 6, 2006) (finding that the ALJ's assessment of Plaintiff's limitations was proper, in part because, despite Plaintiff's subjective complaints of side effects, "none of the medical records submitted by [Plaintiff] indicate[d] that he was suffering from side-effects of the medications he was taking"); *Browne v. Comm'r*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015) ("Browne's argument that the ALJ failed to consider the side effects of his medication is without merit, especially since Browne points to no treatment record in which a medical professional indicates that the side effects of Browne's medications limit his ability to function."). Finally, because the Court has found that the ALJ properly considered the side effects of Plaintiff's medication and that his determination was supported by substantial evidence, the Court need not consider Plaintiff's argument regarding the ALJ's credibility determination with respect to her alleged non-compliance with her medication.

### D.     Whether the ALJ Erred By Failing to Consult a Vocational Expert

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 12, at 10-11 [Def.'s Mem. of Law].) To those reasons, the Court merely adds that, because the ALJ's RFC determination was supported by substantial evidence, which did not include non-exertional limitations, the ALJ was not required to consult a vocational expert.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it

is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: August 18, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge